Larry COMPTON, Trustee, Appellant,

v.

CHATANIKA GOLD CAMP PROPERTIES, an Alaska Partnership, Arthur Lyle Robson, and Kenneth Ringstad, Appellees.

No. S–7792.

Supreme Court of Alaska.

Oct. 1, 1999.

Cabot Christianson and Michelle Boutin, Bundy & Christianson, Anchorage, for Appellant.

Kenneth P. Ringstad, Law Office of Kenneth P. Ringstad, Fairbanks, for Appellee Chatanika Gold Camp Properties.

John Foster Wallace, Call, Barrett & Burbank, Fairbanks, for Appellee Arthur Lyle Robson.

Edward R. Niewohner, Niewohner & Wright, PC, Fairbanks, for Appellee Kenneth Ringstad.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

A creditor purchased litigation claims from the debtors' bankruptcy estate in 1993. The creditor then filed a superior court malpractice suit against the debtors' attorney. In 1996 the bankruptcy court set aside the order approving the sale of the claims and declared that only the bankruptcy trustee was the real party in interest on those claims. The existing superior court parties then filed a stipulation dismissing the malpractice lawsuit with prejudice, and the superior court ordered dismissal with prejudice. The bankruptcy trustee unsuccessfully moved to set aside the dismissal order and to be substituted as the real party plaintiff in interest. Because the claims were assets of the bankruptcy estate and because dismissal of the suit without the trustee's permission violated the automatic stay imposed by 11 U.S.C. § 362(a)(3), we reverse.

### II. FACTS AND PROCEEDINGS

Lorimer and Pamela McLaughlin purchased a historic gold camp near Fairbanks from Chatanika Gold Camp Properties (CGCP) in 1982. When the McLaughlins defaulted on their obligation to CGCP, it reacquired the gold camp in 1990 at a foreclosure sale. Arthur Robson was the McLaughlins' attorney. The McLaughlins claimed that the foreclosure sale was defective and refused to vacate the property. CGCP sued in state court for repossession.

Following the foreclosure sale, but before CGCP's repossession suit was resolved, Masayoshi Okumura contacted the McLaughlins about building facilities on the property so tourists could watch the Northern Lights. Allegedly acting on Robson's advice, the McLaughlins did not advise Okumura of the foreclosure sale. Okumura sent the McLaughlins $638,000 to build the facilities, including an "Aurorium." Tourists were to view the Aurora Borealis from the Aurorium.[1]

In April 1991 CGCP prevailed in its repossession action against the McLaughlins, who were to be evicted from the gold camp premises. Okumura then sued the McLaughlins in state court for equitable relief and damages with respect to construction of the Aurorium. In May 1993 a state-court judgment

---

1. Oh, it was wild and weird and wan,
     and ever in camp o' nights
   We would watch and watch the silver dance
     of the mystic Northern Lights.
   And soft they danced from the Polar sky
     and swept in primrose haze;
   And swift they pranced with their silver feet,
     and pierced with a blinding blaze.
   They danced a cotillion in the sky;
     they were rose and silver shod;

   It was not good for the eyes of man—
     'twas a sight for the eyes of God.
   It made us mad and strange and sad,
     and the god whereof we dreamed
   Was all forgot, and our only thought
     was of the lights that gleamed.
   Robert W. Service, *The Ballad of the Northern Lights* in *Best Tales of the Yukon*, 40 (Running Press ed.1983).

of $878,000 for fraud was entered in favor of Okumura against the McLaughlins. The McLaughlins then filed for Chapter 7 bankruptcy. At the time, they were preparing to appeal from the state repossession and fraud judgments. Attorney Robson represented the debtors in the two lawsuits and in their bankruptcy.

In August 1993 CGCP sought to purchase the McLaughlins' litigation claims and interests "stemming from and/or arising out of" the state-court cases brought by CGCP and Okumura against the McLaughlins. Kenneth Ringstad, CGCP's attorney, applied in the bankruptcy court for an order allowing trustee Mitchel Friday to sell those litigation claims and interests for $5,000. In September 1993 the bankruptcy court granted the trustee permission to sell assets. In October the trustee sold CGCP the debtors' rights, claims, and interests arising out of or stemming from their two state-court cases. Asserting that this sale encompassed claims the McLaughlins had against the attorney who had represented them in the two state cases, in April 1994 CGCP sued Robson for legal malpractice. We refer to this case as *CGCP v. Robson.* Robson answered and filed a third-party complaint against attorney Ringstad. Robson's September 1994 answer asserted as a defense that CGCP did not purchase a malpractice cause of action from the trustee and was not the real party in interest.

In August 1994 the McLaughlins learned of CGCP's malpractice suit against Robson. They filed motions asking the bankruptcy court to clarify whether CGCP had actually purchased any malpractice claims from the bankruptcy estate. They sought a "specific determination" by the bankruptcy court that "either the malpractice claims were not included in the sale, or, if they were included, they were sold for such nominal consideration and under such inequitable circumstances that the sale, insofar as it included malpractice claims, should be set aside with respect to such claims."

United States Bankruptcy Judge Donald MacDonald IV treated the McLaughlins' motions for clarification as motions for relief under Federal Rule of Civil Procedure 60(b).

By memorandum and order entered April 10, 1996, he granted Rule 60(b) relief and vacated the September 1993 order "insofar as it purports to transfer any malpractice claims or rights to [CGCP]." The order granting relief stated:

2. Insofar as this court's order of sale of September 21, 1993, Docket Entry 35, granting the trustee's application to sell assets purports to sell malpractice claims against Arthur Lyle Robson, it is vacated and found to be null and void. *No malpractice claims were sold or transferred as a result of the order.* However, the order remains valid and fully effective as to other litigation rights and claims described in the trustee's August 30, 1993, application to sell assets.

3. *The claims asserted by CGCP* in [*CGCP v. Robson*], as well as any other claims of the [McLaughlins] against Robson or [Robson's malpractice insurance carrier], *are property of the bankruptcy estate.* All are subject to the turnover property of the bankruptcy estate. *All are subject to the turnover rights of a Chapter 7 trustee and the trustee is the real party in interest.*

(Emphasis added.)

On April 16, 1996, Larry Compton replaced Mitchel Friday as the trustee in the McLaughlins' bankruptcy.

In early May 1996 the attorneys for Robson, CGCP, and Ringstad signed and filed a stipulation for dismissal with prejudice of *CGCP v. Robson.* They were the only parties to that lawsuit. Their stipulation did not refer to the bankruptcy court's April 10 order. On May 8 the superior court signed an order dismissing *CGCP v. Robson* with prejudice.

On May 17 trustee Compton entered an appearance in *CGCP v. Robson;* he moved to set aside the order approving the dismissal of the case with prejudice and to be substituted as the real party plaintiff in interest. Trustee Compton asserted that he first learned of the dismissal of *CGCP v. Robson* after it had already occurred.

The superior court heard the trustee's motions in July 1996. The court denied both

motions, concluding that Alaska Civil Rule 41(a)(1)[b] authorized all the parties to agree to voluntary dismissal, "leaving the bankruptcy Trustee to go ahead and pursue an action on its own."

The trustee appeals.

## III. DISCUSSION

### A. Standard of Review

■ This appeal turns on the application of federal bankruptcy law and raises legal questions which we decide exercising our independent judgment.[2] To the extent this appeal raises questions about the interpretation of our civil rules, we exercise our independent judgment.[3] "On questions of law, our duty is to adopt the rule of law which is most persuasive in light of precedent, reason, and policy."[4] "We decline to review claims not raised below except to the extent that they may constitute plain error."[5] "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[6]

■ "Whether or not a party should be substituted for another rests in the sound discretion of the trial court."[7]

### B. Was It Error to Deny the Trustee's Motions?

The trustee argues that it was error to deny his motions to substitute himself as the real party in interest and to set aside the order approving the stipulation to dismiss CGCP v. Robson with prejudice. He contends that, as Bankruptcy Judge Mac-Donald's April 10 order determined, the trustee was the real party in interest in the dismissed case. He argues that dismissing CGCP v. Robson violated Alaska Civil Rule 17(a), worked a forfeiture of the estate's mal-

practice claims, and deprived the estate of its rights because the statute of limitations may bar the estate from commencing a new action against Robson. He also argues that dismissal violated the automatic stay imposed by 11 U.S.C. § 362(a)(3).

CGCP, Robson, and Ringstad argue that the superior court appropriately dismissed CGCP v. Robson after the parties filed their signed stipulation under Rule 41(a)(1)[b] and that the stipulation, signed by all parties to the suit, was effective upon filing without entry of an order of dismissal. Robson further argues that the trustee failed to take timely action to protect the interests of the bankruptcy estate, and that the trustee's remedy is to institute another malpractice action against Robson, rather than be substituted into an action that Robson claims was lawfully dismissed. Robson also contends that CGCP did not forfeit the trustee's claims or fail to turn the malpractice claims over to the bankruptcy estate, because Judge MacDonald's order established that CGCP never owned the malpractice claims in the first place, and therefore had nothing to turn over.

#### 1. Dismissal violated the automatic stay.

■ We conclude that dismissing the case after April 10 without the trustee's permission violated the automatic bankruptcy stay imposed by federal law.[8] In summary, we reason as follows: the malpractice claims being asserted in state court were property of the estate; after April 10, 1996, only the trustee could prosecute or impair the value of the claims; any action impairing the value of estate property without the trustee's permission violated the automatic stay; and the dismissal violated the stay.

---

**2.** See State, Dep't of Health & Soc. Servs. v. Alaska State Hosp. & Nursing Home Ass'n, 856 P.2d 755, 760 (Alaska 1993).

**3.** See Airoulofski v. State, 922 P.2d 889, 892 (Alaska 1996).

**4.** Grove v. Alaska Constr. & Erectors, 948 P.2d 454, 456 (Alaska 1997) (citing Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**5.** Miller v. Sears, 636 P.2d 1183, 1189 (Alaska 1981).

**6.** Murray v. Feight, 741 P.2d 1148, 1156–57 (Alaska 1987).

**7.** State v. 18,018 Square Feet, More or Less, 621 P.2d 887, 889 (Alaska 1980) (citing 3B J. Moore, Federal Practice § 25.08, at 25–85 (1980)).

**8.** See 11 U.S.C. § 362(a)(3) (1994).

### a. The claims were "property of the estate."

It is undisputed that any malpractice claims the McLaughlins potentially had against Robson became the property of the McLaughlins' bankruptcy estate when they filed for bankruptcy in June 1993. Because Robson's alleged malpractice predated the bankruptcy, any claim the McLaughlins potentially had against Robson existed when they filed for bankruptcy. According to section 541 of the Bankruptcy Code, "all legal and equitable interests of the debtor in property" become property of the estate when the debtor files for bankruptcy.[9] Any malpractice claims against Robson were therefore the estate's.

The estate sold its litigation claims and interests in the state-court cases to CGCP in October 1993. The sale agreement referred to all the McLaughlins' "rights, claims and interest in, to, [a]rising out of and/or stemming from" the two state court actions. CGCP then sued Robson.

When the scope of the sale was litigated in federal court, Judge MacDonald found that "the price paid for the claims was not fair and reasonable. In fact, the price paid was so unreasonable it shocks the conscience of the court." For $5,000 CGCP had bought claims the judge thought were potentially worth millions. For this and other notice-related and equitable reasons, Judge MacDonald decided to "set aside" the sale of malpractice claims.[10] Judge MacDonald stated in his April 10 order that "[i]nsofar as this court's order of sale ... purports to sell malpractice claims against Arthur Lyle Robson, it is vacated...."

### b. After April 10, 1996, it was clear that only the trustee could pursue the claims.

Judge MacDonald's April 10, 1996, order declared that the legal right CGCP sought to enforce did not belong to CGCP. The order stated that "[n]o malpractice claims were sold or transferred as a result of the [September 1993] order." The April 10 order also held that the malpractice claims against Robson "are property of the bankruptcy estate. All are subject to the turnover property of the bankruptcy estate. All are subject to the turnover rights of a Chapter 7 trustee and the trustee is the real party in interest."

After April 10 the malpractice claims were without doubt exclusively the property of the estate. Under the Bankruptcy Code, the trustee has the power to "collect and reduce to money the property of the estate,"[11] and also the "capacity to sue and be sued."[12] As we have noted, only the trustee has standing to pursue causes of action that belong to the bankruptcy estate.[13]

### c. Any action impairing estate property violated the automatic stay.

Section 362(a)(3) of the Bankruptcy Code imposes a stay on "any act to obtain possession of property of the estate or ... to exercise control over property of the estate."[14] The malpractice suit sought damages that Robson allegedly owed the estate. Therefore, prosecuting or prejudicing the malpractice suit without the trustee's permission would violate the automatic stay.

Robson argues that CGCP never possessed the right to assert malpractice claims against him, because the sale was void when it took place. Robson therefore concludes

---

**9.** 11 U.S.C. § 541(a)(1) (1994). *See also In re M & L Bus. Mach. Co., Inc.,* 136 B.R. 271, 275 (Bankr.D.Colo.1992) (defining legal interests to include causes of action); *Besing v. Seeligson, Douglass, Falconer & Vanden Eykel,* 822 S.W.2d 107, 109 (Tex.App.1991) (declaring legal malpractice action to be property of estate).

**10.** Insufficient consideration is grounds for voiding a contract in Alaska. *See Blumenstein v. Phillips Ins. Ctr., Inc.,* 490 P.2d 1213, 1222–23 n. 8 (Alaska 1971).

**11.** 11 U.S.C. § 704(1) (1994).

**12.** 11 U.S.C. § 323(a) (1994).

**13.** *See Briggs v. Newton,* 984 P.2d 1113, 1117 (Alaska 1999); *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745, 754 (Alaska 1992).

**14.** 11 U.S.C. § 362(a)(3) (1994). While the trustee raises the automatic stay issue on appeal, he did not do so in the superior court. The court's error in this case, however, was plain. *See Miller v. Sears,* 636 P.2d 1183, 1189 (Alaska 1981).

that dismissal did not violate the stay because dismissal did not impair estate assets.

Robson's argument ignores both the effect of the April 10 order and the potential effect of the dismissal. As we have seen, the claims were exclusively estate property as of April 10. And insofar as the dismissal was with prejudice, it potentially impaired the value of an estate asset.

For example, the trustee suggests that if he is required to commence a new action against Robson, Robson will raise a statute of limitations defense that potentially would defeat the trustee's claim. Robson has not disavowed that potential defense. Therefore dismissal with prejudice potentially impaired the value of an estate asset and prejudiced creditors. After April 10 dismissing the lawsuit without the trustee's permission violated subsection 362(a)(3).

Some language in the April 10 memorandum and order suggests, as Robson argues, that the bankruptcy court considered the sale of malpractice claims to be void ab initio. Other language suggests that the court considered the sale of the malpractice claims to be voidable, not void. For example, the April 10 order states that the "[September 1993 sale] order remains valid and fully effective as to other litigation rights and claims described in the trustee's August 30, 1993, application to sell assets." And the court's accompanying memorandum states that the court was vacating the sale only "insofar as it purports to transfer any malpractice claims or rights to CGCP."

■ Federal policy, generally reflected in the stay statute and the bankruptcy code, favors the preservation of assets for the benefit of creditors.[15] We are unwilling to read the orders of the United States Bankruptcy Court in a manner that would defeat that policy and impair an estate asset.

Moreover, there is no need to decide now whether the sale was void or what rights CGCP acquired in 1993. Assuming the sale was void from the beginning, the state court parties, absent the trustee's permission, still had no authority to prosecute or dismiss claims that on their face belonged to the trustee. And the same order that vacated the sale also precluded the state court parties from dismissing the claims.

   d. *The dismissal violated the automatic stay.*

Accordingly, dismissing the malpractice claim without the trustee's permission, whether by stipulation effective upon filing or by superior court order, violated the automatic stay. We accordingly reverse the dismissal and remand for further proceedings.

■ Robson argues that setting aside the dismissal is an inappropriate remedy for violating the automatic stay. We disagree. As the Ninth Circuit Court of Appeals has held more than once, judicial proceedings in violation of an automatic stay are "void, not voidable."[16]

### 2. *Other issues*

The trustee alternatively argues that federal supremacy, res judicata, and collateral estoppel support a reversal of the denial of his motions. Because we reverse for the reasons discussed above, it is unnecessary to address these alternative arguments.

It is necessary to address briefly the denial of the trustee's substitution motion. Given the rulings of the bankruptcy court, there is no possible basis for denying that motion.

### IV. *CONCLUSION*

Because dismissing the malpractice action violated the automatic stay, we VACATE the order dismissing the case with prejudice, REVERSE the order denying the motion to

---

15. *See In re Hot Springs Broadcasting, Inc.,* 207 F.Supp. 303, 312 (W.D.Ark.1962) ("[T]he very foundation of the Bankruptcy Act is bottomed upon the necessity of preservation of the assets of the bankrupt estate for the benefit of creditors; and this consideration overrides any consideration of subsidiary interests.").

16. *In re Schwartz,* 954 F.2d 569, 571 (9th Cir. 1992); *see also In re Shamblin,* 890 F.2d 123, 125 (9th Cir.1989). We read the damages, costs, and fees remedies set out in 11 U.S.C. § 362(h) as being available to an injured party over and above the invalidation of any action that violates a stay.

substitute and to set aside the order of dismissal, and REMAND for entry of an order substituting the trustee as the real party plaintiff in interest and for further proceedings.