Lisa PLATZ, Appellant,

v.

José ARAMBURO, Appellee.

No. S–9492.

Supreme Court of Alaska.

Feb. 16, 2001.

Alan J. Hooper, Gloria Hanssen, Hooper & Hanssen, Fairbanks, for Appellant.

Daniel L. Callahan, Schendel & Callahan, Fairbanks, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I.  INTRODUCTION

Lisa Platz appealed the trial court's entry of default judgment against her and its decision to award full custody of her daughter to the child's father, José Aramburo.  She argues that the trial court lacked jurisdiction, violated her right to due process, and failed to consider the statutory factors required in custody determinations.  Following oral argument on September 22, 2000, we issued an order remanding this case to the trial court, and advised that an opinion would follow.  Because the trial court failed to consider the factors required by AS 25.24.150(c) in making child custody decisions, we vacated the order granting custody to José Aramburo and remanded the case to the superior court for an evidentiary hearing on the best interests of the child.

## II.  FACTS AND PROCEEDINGS

Lisa Platz and José Aramburo had a daughter, Rebbeca Nicole Platz–Aramburo, in 1992, in Bellingham, Washington.  Aramburo acknowledged paternity and is listed on Rebbeca's birth certificate as her father.  Platz and Aramburo separated soon after Rebbeca's birth.  Aramburo visited Rebbeca while Platz and Rebbeca lived in Washington.  An administrative child support order was entered against Aramburo while Platz was in Washington.

In February 1994 Platz and Rebbeca moved to Fairbanks.  While in Fairbanks, Platz married Robert Platz, who filed for a step-parent adoption of Rebbeca.  The adoption was dismissed in late 1997, and Platz subsequently divorced Robert Platz.  Around April of 1998 Platz and Rebbeca left Fairbanks.

According to Aramburo, once Platz moved to Fairbanks, she did not allow him to have any contact with Rebbeca, and he was not certain where Platz and Rebbeca lived.  Aramburo claims that Platz told him that he would never see Rebbeca again and that she did not want Rebbeca to learn that he was her father.

Aramburo filed a Verified Petition for Determination of Custody on July 31, 1998, in Fairbanks.  The petition alleged that Platz had interfered with Aramburo's relationship with Rebbeca and requested that Aramburo be given regular contact, including periods of actual custody or visitation.  Aramburo requested that the court make a custody determination based on the child's best interests, allow for interim visitation, grant a restraining order preventing Platz from taking Rebbeca across state lines or interfering with his visitation, and enter a child support order.

Aramburo located Platz, and served her on April 8, 1999, in Avon, Ohio. On May 10, 1999, Platz, appearing pro se, requested and received a twenty-eight-day extension of time to file an answer. Platz did not file an answer.

On June 15, 1999, Aramburo filed a Motion to Establish Visitation, which was served on Platz by mail on that date. Aramburo requested that the court create a plan for him and Rebbeca to re-establish their relationship and have contact and visitation. Platz did not respond to the motion, and the court entered a temporary visitation order on July 19, 1999. The court ordered Platz to contact a mental health clinician or counselor and schedule an appointment to help Rebbeca through the initial contacts between her and Aramburo. The court ordered phased-in telephonic visitation and, ultimately, in-person visitation. This order was distributed by the clerk on July 23, 1999.

On July 27, 1999, Aramburo applied for entry of default. On August 4, 1999, the clerk entered default against Platz for failure to file an answer. The application for entry of default and the entry of default were served on Platz.

The court scheduled a default hearing, and Platz was served with notice of the hearing. The notice indicated that Aramburo would "request a default judgment be entered in this action in which legal and physical custody of the minor child . . . is awarded to him." The hearing was conducted on September 8, 1999, by Judge Mary E. Greene. Aramburo's attorney appeared in person; Aramburo and Platz appeared telephonically.

At the hearing, Aramburo testified that Platz had not contacted him, helped him visit Rebbeca, or worked with a counselor. Aramburo told the court that he wanted custody of Rebbeca and would be willing to allow Platz to have visitation with their daughter. Aramburo testified that Platz had returned several child support checks and not cashed the others.

Platz ▪contested the court's jurisdiction. Platz also informed the judge that she had received the temporary orders only a week previously and had not had time to hire an attorney. The judge explained to Platz that she needed to move to have the default set aside. Platz testified that she had taken Rebbeca across state lines and failed to inform Aramburo of her whereabouts, explaining that she had not read the temporary order. When asked whether she would follow a court order to allow Aramburo to visit with Rebbeca, Platz responded "I would love to say, yes, if I believed that it would not damage her. But I don't know that. I cannot predict the future and I do not know how the child will react."

At the conclusion of the hearing, the judge read the temporary order to Platz and gave her two weeks to comply. The judge concluded the hearing by noting that she wanted Platz to file a document in court that set forth her compliance with the order. The judge warned that if Platz did not file such a document by September 23, the judge would "grant Mr. Aramburo custody to carry out the Temporary Order's provisions."

The court entered written findings of fact and an order on September 30 reflecting the court's oral order entered at the end of the September 8 hearing. Specifically, the court found that it had jurisdiction to hear the case, that Platz had not complied with the Temporary Visitation Order, that Platz had denied Aramburo contact with Rebbeca, and that it was in Rebbeca's best interests to have a relationship with her father. The court ordered Platz to comply with the Temporary Visitation Order.

On October 19, 1999, Aramburo filed a motion requesting that the court grant him physical custody of Rebbeca because of Platz's failure to comply with the court's orders. The court agreed to give the motion expedited consideration and ordered Platz to respond by October 28. On October 25, Platz filed a motion to dismiss because the court lacked jurisdiction. Aramburo opposed the motion as untimely and noted that the court had already ruled on the matter of jurisdiction. The court denied Platz's motion to dismiss, concluding that it had properly asserted jurisdiction.

On October 29 the court entered an order on Aramburo's motion. The court found that Platz had failed to comply with its previous

orders. The court then awarded physical custody of Rebbeca to Aramburo, with visitation for Platz, transportation costs to be paid by Aramburo.

Platz filed a motion in Ohio state court on November 5, 1999, arguing that Alaska was an inconvenient forum and that the Ohio court should take exclusive jurisdiction of the case. She requested that the Ohio court stay enforcement of the Alaska court order. The Ohio court spoke with Judge Greene and concluded that the Alaska court had jurisdiction. The Ohio court dismissed the case for lack of jurisdiction.

Immediately after filing in Ohio, Platz filed a motion in Alaska asking the court to reconsider its decision because Platz did not have sufficient time to respond to Aramburo's motion for custody. Platz argued that it was in the child's best interests to remain with her and that all further proceedings should occur in the Ohio courts. Judge Greene denied Platz's motion for reconsideration on December 17; the order was distributed on December 20, 1999. Platz filed her Notice of Appeal on December 30, 1999.

## III. *STANDARD OF REVIEW*

■ Whether Platz's appeal is timely is a question of law governed by the Appellate Rules.[1] This court exercises its independent judgment in interpreting those rules.[2] "On questions of law, [this court's] duty is to adopt the rule of law which is most persuasive in light of precedent, reason, and policy."[3]

■ This court will not consider arguments that were not raised before the trial court except to the extent that the errors alleged constitute plain error.[4] "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[5]

■ This court reviews the trial court's custody decision for abuse of discretion.[6]

## IV. *DISCUSSION*

### A. *Timeliness*

■ Aramburo claims that Platz's appeal is untimely because the order from which Platz appeals was entered on September 30, 1999, and she filed her appeal on December 30, 1999. The appeal of a child custody order must be filed within fifteen days of distribution of that order.[7] Platz argues that her appeal was timely because the order from which she appeals was the October 29, 1999, order granting custody of Rebbeca to Aramburo. She asserts that the September 30, 1999, order was not a final appealable order, because it directed her to file a document detailing her compliance with the July 19, 1999, temporary visitation order.

Because the order from which Platz appeals is the October 29, 1999, order granting custody of Rebbeca to Aramburo, we find that her appeal was timely.[8] Platz appeals the award of custody of Rebbeca to Aramburo. The order granting custody to Aramburo was entered on October 29, 1999. The order entered September 29, 1999, merely stated that the superior court had jurisdiction, that Platz was required to file a document with the court detailing her compliance with the court's previous visitation order, and that the court *would* order a transfer of physical custody should Platz not comply. We therefore find that Platz's appeal was timely filed.

### B. *Jurisdiction and Forum Non Conveniens*

■ Platz argues that the superior court erroneously entertained Aramburo's suit be-

1.  *See* Alaska R.App.P. 204, 218.

2.  *See Compton v. Chatanika Gold Camp Properties*, 988 P.2d 598, 601 (Alaska 1999).

3.  *Id.* (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

4.  *See id.*

5.  *Id.* (quoting *Murray v. Feight*, 741 P.2d 1148, 1156–57 (Alaska 1987)).

6.  *See Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999).

7.  Alaska R.App.P. 218(d).

8.  Although her appeal was filed more than fifteen days following the custody order, it was within fifteen days of the denial of her motion to reconsider that order.

cause it did not have jurisdiction. She argues, in the alternative, that the court should have dismissed the case on the grounds of forum non conveniens. Because we find that the superior court properly asserted jurisdiction, we do not disturb that portion of the trial court's finding.

The superior court found jurisdiction under the now-repealed Uniform Child Custody Jurisdiction Act.[9] Specifically, the court found jurisdiction under AS 25.30.020(a)(3), because no other state had jurisdiction under provisions similar to AS 25.30.020(a)(1) or (2), and it was in the best interests of Rebbeca for the court to assert jurisdiction.

Platz claims that the court erred in asserting jurisdiction because Arizona[10] could have asserted jurisdiction under its catch-all provision, which is similar to the catch-all provision under which the superior court asserted jurisdiction.[11] She argues that since Rebbeca was "permanently out of state," it was not in her best interests to have Alaska hear her custody case. However, that Arizona could

have asserted jurisdiction under its catch-all provision does not deprive Alaska of jurisdiction.[12] Moreover, Rebbeca had lived in Alaska for more than four of her six years, and the child had no home state at the time the petition for determination of custody was filed. The court found that Alaska had more information about the child than any other state, and that it was therefore in the child's best interests for Alaska to assert jurisdiction. Under the foregoing circumstances, we cannot say that it was an abuse of discretion to assume jurisdiction.

■ Platz also argues that even if the court could have asserted jurisdiction, it should have declined to do so because Alaska is an inconvenient forum. Platz did not raise this argument in the court below, but she claims that it was plain error for the court not to dismiss the case sua sponte, under AS 25.30.060.[13] Points not raised in the trial court are generally considered to be waived for purposes of appeal, but they may be reviewed for plain error. The latter is said

---

9. AS 25.30.010–.910. Former AS 25.30.020(a) stated:

> (a) The superior court has jurisdiction to make a child custody determination by initial or modification of decree if the conditions set out in any of the following paragraphs are met:
> (1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
> (2) the child is physically present in this state and is a child in need of aid as defined in AS 47.10.990; or
> (3) it (A) appears that no other state would have jurisdiction under prerequisites substantially in accordance with (1) or (2) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) is in the best interest of the child that this court assume jurisdiction.

10. Rebbeca was enrolled in school in Arizona as of April of 1998, but she had not lived there for six months as of the date Aramburo filed his petition. Therefore, Arizona was not Rebbeca's home state. *See* AS 25.30.909(7).

11. *See* Ariz.Rev.Stat.Ann. § 25.433(A)(4) (2000).

12. *See* Former AS 25.30.020(a)(3).

13. Former AS 25.30.060, in effect at the time, reads as follows:

> (a) The superior court may decline to exercise its jurisdiction any time before issuing a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
> (b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party. . . .
> (c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
> (1) if another state is or recently was the child's home state;
> (2) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;
> (3) if better evidence concerning the child's present or future care, protection, training, and personal relationships is available in another state, or if equally substantial evidence is more readily available in another state;
> (4) if the parties have agreed on another forum no less appropriate; and
> (5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in AS 25.30.010.

to exist "where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[14]

■ The superior court did not plainly err when it did not dismiss this case on the basis of forum non conveniens. Factors relevant to a forum non conveniens determination include

> the ease of access of proof, the availability and cost of obtaining witnesses, the possibility of harassment of the defendant in litigating in an inconvenient forum, the enforceability of the judgment, the burden on the community in litigating matters not of local concern, and the desirability of litigating local matters in local courts."[15]

Except for Platz's unsworn statement that she and Rebbeca had been out of the state for eighteen months and now lived in another state, the court had no information before it that demonstrated clearly that Alaska was an inconvenient forum. The superior court did not abuse its discretion in not dismissing the custody case on a forum non conveniens basis.

Because the court properly asserted jurisdiction under AS 25.30.020(a)(3), and because the court did not abuse its discretion in dismissing the case for forum non conveniens, we affirm the court's assumption of jurisdiction.

**14.** *Murray v. Feight,* 741 P.2d 1148, 1156–57 (Alaska 1987).

**15.** *Bodzai v. Arctic Fjord,* 990 P.2d 616, 621 n. 28 (Alaska 1999) (quoting *Crowson v. Sealaska Corp.,* 705 P.2d 905, 908 (Alaska 1985)).

**16.** *See* Alaska R.Civ.P. 55(c)(1) ("If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to ... establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.").

**17.** According to AS 25.24.150(c):

> The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall consider
> (1) the physical, emotional, mental, religious, and social needs of the child;

## C. *The Child's Best Interests*

■ Platz argues that it was error for the court to award custody of her daughter to the child's father without holding a "best interests" hearing. She contends that the court failed to consider the factors required by statute when making child custody determinations and that the court transferred custody of the child as punishment for Platz's failure to comply with the court's orders regarding visitation. We proceed to consider these claims.

Civil Rule 55 specifies procedures for defaults and default judgments. Subsection (c)(1) contemplates "such hearings ... as [the court] deems necessary and proper" when "in order to enable the court to enter judgment ... it is necessary ... to establish the truth of any averment by evidence...."[16] Under AS 25.24.150(c), custody issues shall be determined "in accordance with the best interests of the child." Alaska Statute 25.24.150(c) requires the court to determine the best interests of the child by considering nine separate factors.[17]

■ In our view, to use the language of Rule 55(c)(1), it was necessary in order to establish the truth of Aramburo's best interests averment to hold an evidentiary hearing at which all factors relevant to that subject could be examined. This conclusion follows

> (2) the capability and desire of each parent to meet these needs;
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
> (4) the love and affection existing between the child and each parent;
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
> (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
> (7) any evidence of domestic violence, child abuse or child neglect in the proposed custodial household or a history of violence between the parents;
> (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
> (9) other factors that the court considers pertinent.

from our decision in *Hakas v. Bergenthal.*[18] We held in *Hakas* that the superior court could not change custody solely because the current custodial parent had not complied with orders of the court. We stated:

> A best interest of the child inquiry is an essential component of a custody determination, whether it is in the context of an initial custody determination or modification of an existing custody arrangement. This inquiry is not obviated by [the mother's] noncooperation. In making a custody determination the court must consider "all relevant factors including those enumerated in AS 25.24.150(c)." Contrary to [the father's] assertions, review of the record reveals no express consideration by the superior court of [the child's] best interests in any context. Rather, review of the superior court's findings persuades us that the superior court awarded custody of [the child] to [the father] as a sanction against [the mother] without undertaking a best interests of the child analysis.[19]

In *Hakas* we reversed the superior court's order changing custody and remanded the case "for the purpose of redetermining custody based upon a best interests of the child analysis with appropriate findings of fact which address all relevant criteria of AS 25.24.150(c)."[20] Just as a custodial parent's failure to comply with court orders cannot justify a change of child custody without a best interests determination, a parent's failure to file a responsive pleading which results in a default cannot justify such an order without such a determination. The interests of a third person, the child, are central to change of custody cases. This means that despite the wilful failure of a custodial parent to follow court procedures or orders, custody cannot be changed without addressing fully the question whether the change is in the child's best interests.

In the present case there was a post-default evidentiary hearing on September 8, 1999. But the focus of that hearing was on whether Platz was willing to comply with the court's temporary visitation order of July 19, 1999, rather than on the more general subject of the best interests of Rebbeca. The trial court found following the hearing that it was in the best interests of Rebbeca for her to have a relationship with her father and that to this end a gradual reintroduction of Aramburo into the child's life would be desirable. These findings were well justified. And the willingness of a parent to allow a relationship between the child and the other parent is one of the nine factors relevant to the best interests of the child under AS 25.24.150(c). But the court did not demonstrate consideration of any of the other relevant factors in its order following the September 8 hearing and made no general finding concerning Rebbeca's best interests. Thus the September 8, 1999, hearing and order were not sufficiently comprehensive to serve as a basis for a general custody change.

Based on the foregoing, we believe that the custody order of October 29, 1999, must be vacated. On remand an evidentiary hearing concerning the best interests of the child must be held following which the court should enter findings of fact which address the relevant factors specified in AS 25.24.150(c).[21]

## V. CONCLUSION

For the above reasons the custody order of October 29, 1999, is VACATED and this case is REMANDED to the superior court for further proceedings consistent with this opinion.

---

**18.** 843 P.2d 642 (Alaska 1992).

**19.** *Id.* at 644–45 (citations and footnotes omitted).

**20.** *Id.* at 645.

**21.** Our disposition in this case makes it unnecessary to discuss Platz's claim that her entitlement to due process of law has been violated.