Henry BRANDAL, Appellant,

v.

Lorraine SHANGIN, Appellee.

No. S–9695.

Supreme Court of Alaska.

Dec. 14, 2001.

As Corrected Feb. 27, 2002.

---

William T. Ford, Anchorage, for Appellant.

Allison E. Mendel and Penny Agallianos, Mendel & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

This appeal concerns property division and child support disputes arising from Henry Brandal and Lorraine Shangin's divorce. We hold that the trial court did not err in classifying Henry's right to use his grandmother's Chignik Lagoon land as a marital asset, or in valuing the original cost of this asset. But because we conclude that it was error to use compound rather than simple interest to calculate the present value of that asset, we remand for further calculations. We affirm the trial court's fifty/fifty distribution of the EXXON VALDEZ settlement proceeds. We remand for application of a recapture analysis to the $6,800 Alyeska permit payout Henry claims he used for post-separation living expenses. We remand for determination whether it is in the children's best interests to delay payment of Lorraine's past-due child support, and hold that the trial court did not err by requiring Henry, should he sell his limited entry permit, to use the sale proceeds to satisfy his property division debts to Lorraine.

### II. FACTS AND PROCEEDINGS

Henry Brandal and Lorraine Shangin married in January 1979 and have four children. The eldest was born in August 1979; the youngest are twins born in September 1983.

Henry received an interim limited entry salmon seine permit for the Chignik Lagoon area in 1978. A late application prevented Henry from receiving a full permit and the interim permit is nontransferable and must be renewed annually. The parties stipulated

that the interim permit was Henry's separate property.

In 1979 the couple purchased a $5,800 mobile home for Henry's grandmother. In exchange for the mobile home, Henry's grandmother allowed the couple to use some of her land in Chignik Lagoon. Lorraine testified that the intent behind this exchange was that the couple would transfer the Chignik Lagoon property to their name, but that they failed to follow through on the title transfer. She testified that "it was a verbal agreement that that was our land, it belonged to us. It was given to us." Henry testified that "the tentative agreement was that if anything ever happened in the marriage that it would go back in the family since it was my grandfather's land.... No matter what[,] it would go back into the family if anything should happen to me or our marriage."

Henry and one of his crew members built a house on the Chignik Lagoon land in the fall of 1979. The family lived in the house during the summer fishing months, and lived elsewhere for the winter months. The trial court found that the failure to transfer title to the couple occurred while the parties were still together, and that therefore "Ms. Shangin is stuck with the failure to follow through," and the "real estate ... is not part of the marital estate." Nonetheless the trial court held that the parties purchased the right to live on the property with marital money, and that the right to live on the property was part of the marital estate.

The EXXON VALDEZ oil spill severely depressed commercial fishing in the Chignik area for several years. The couple was forced to file for bankruptcy in 1991. Henry is part of a class action law suit, and anticipates collecting in excess of one million dollars under the EXXON VALDEZ settlement. The settlement will potentially include three classes of damages—permit devaluation, vessel devaluation, and seasonal losses for 1989–91. The trial court found that the recovery is marital property, with "the exception of the portion of the recovery related to devalu-

ation of his permit, which is not marital property, because the permit was not marital property...." The court divided the marital portion of the EXXON VALDEZ recovery fifty/fifty. In 1994 Henry received a payment of $6,800 for what he called the "Alyeska permit payout"—Alyeska's share of the EXXON VALDEZ oil spill claim. The court charged this settlement payout against Henry's side of the ledger.

The parties separated in October 1993. Lorraine moved out of the family's Anchorage home, leaving the four boys with Henry. Lorraine did not pay child support during this time, although she bought the children clothing and sent food to Henry and the children. The trial court ordered Lorraine to pay support arrearages, and required her to submit salary documents so the arrearages could be calculated. The trial court held that neither party had to pay the other until Henry received the money from the EXXON VALDEZ claims. The court ordered that "[i]n the event Ms. Shangin is owed money by Mr. Brandal, she may also have a lien against his interim use permit, or if that ripens into an actual permit, to the extent that's allowed by law, although I suspect—I question whether that's allowed. But she can't enforce it and require sale of the permit." The court also ruled that "[i]f it turns out that money is paid on the EXXON VALDEZ litigation, then the parties—whoever has the judgment may try to execute against other assets at that time, but not before."

## III. DISCUSSION

[1] Property division consists of three steps: (1) assessing the nature of the property (marital or nonmarital); (2) valuing the property; and (3) equitably allocating the property.[1]

### A. Standard of Review

[2–4] We review the trial court's conclusions regarding the marital nature of property for abuse of discretion.[2] Property value determinations are factual decisions that we will overturn only if they are clearly errone-

---

1. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

2. *Jones v. Jones*, 835 P.2d 1173, 1175 (Alaska 1992) (citation omitted).

ous.[3] We review the trial court's equitable allocation of property for abuse of discretion and will reverse only if the allocation is clearly unjust.[4] Any legal determinations made during this process are reviewed de novo.[5]

### B. The Trial Court Did Not Err in Finding that the Right to Use the Chignik Lagoon Land Was a Marital Asset.

■ Henry argues that the court erred in finding that the right to use the Chignik Lagoon land was a marital asset. He contends that Lorraine already received compensation for her share of the $5,800 purchase price in the form of the right to use the land during the marriage. Henry argues that allowing Lorraine to collect the amount of the original investment affords her a double recovery. We disagree.

Although determining whether property is a marital asset is a legal question,[6] that determination turns here on a factual finding. The trial court found that the there was an "agreement whereby that land might ultimately be conveyed to them." The trial court found that although Henry and Lorraine failed to secure the transfer of the land, they did use marital money to purchase the trailer, and that the trailer purchase "was related to their right to live in and use" the Chignik Lagoon property.

■ We hold that the record supports these findings and that these findings support the trial court's legal conclusion that the right to use the Chignik Lagoon land is a marital asset. Property acquired during a marriage is presumed to be marital, and the party arguing to the contrary bears the burden of proof of showing that the property is separate.[7] Henry has not met this burden.

The superior court's findings are supported by Lorraine's testimony regarding the agreement. Henry does not argue that these factual findings were clearly erroneous.

Henry also argues that the right to live on the property was a family gift or inheritance, and is therefore not properly part of the marital estate. He offers no factual support for this characterization and the record demonstrates that the parties exchanged marital funds for the right to live on the land. Although Henry testified that they were allowed to use the land with the understanding that the land would never leave the family, Lorraine testified that it was intended that the title would be placed in both their names. On this record, it was not clear error for the trial court to resolve this factual question in Lorraine's favor.

■ Even if the right to use the Chignik Lagoon property is characterized as a gift, Lorraine's testimony supports the trial court's finding that the gift was given to both parties. A gift received "by both parties jointly, of course, constitutes marital property subject to division." [8] Additionally, the parties lived each fishing season in the house built on the Chignik Lagoon property, demonstrating an intent to treat the right to use the land as a marital asset. "Separate property becomes marital only upon a showing that the parties intended to treat it as marital." [9]

We hold that the trial court did not err in characterizing the right to use the Chignik Lagoon land as a marital asset. Because Henry retains the ability to exercise his right to use the land, the trial court appropriately placed this asset on Henry's side of the ledger.

3. *Doyle v. Doyle,* 815 P.2d 366, 368 (Alaska 1991) (citations omitted).

4. *Cox v. Cox,* 882 P.2d 909, 913–14 (Alaska 1994) (citing *Doyle,* 815 P.2d at 368).

5. *Id.* at 913 (citing *Lewis v. Lewis,* 785 P.2d 550, 552 (Alaska 1990); *Lantz v. Lantz,* 845 P.2d 429, 431 n. 1 (Alaska 1993)).

6. *Wanberg,* 664 P.2d at 570 ("The first stage of the process is in large part a legal determination,

involving the interpretation of AS 09.55.210(6), and applying legal principles to the facts of the case.").

7. *Coffland v. Coffland,* 4 P.3d 317, 321–22 (Alaska 2000).

8. *Julsen v. Julsen,* 741 P.2d 642, 648 n. 9 (Alaska 1987).

9. *Harrelson v. Harrelson,* 932 P.2d 247, 251 (Alaska 1997) (citations omitted).

## C. The Trial Court Did Not Clearly Err by Relying on the Trailer Cost in ·Valuing the Right to Use the Chignik Lagoon Land, but Should Have Used Simple, Not Compound, Interest to Calculate the Present Value of that Right.

■ The trial court found that the total value of Henry's right to live on the Chignik Lagoon property was $46,497.39 as of November 1, 1999. That total reflected the $5,800 purchase price of the trailer Henry and Lorraine bought for Henry's grandmother, plus interest between the 1979 purchase date and November 1, 1999.

Henry argues that the trial court erred in valuing the right to use the Chignik Lagoon land. Lorraine argues that the trial court appropriately valued the property based on the evidence before it.

We agree with Lorraine's analysis regarding the trial court's reliance on the $5,800 purchase price of the trailer. The trial court held that

the only evidence that I have in the record regarding the value of the right to continue to use that property is the amount that Ms. Shangin and Mr. Brandal paid for that right when they first purchased it, which was $5,800. So the right to use that property has a value of $5,800, together with interest from the time it was paid back in 1979 to present.

Henry argued at trial that the parties' right to use the Chignik Lagoon land cannot be valued because the right "has no market value" as it cannot "be sold to a third party." He also suggested that the trial court "pay Ms. Shangin half the value of the trailer, and we certainly couldn't argue with that." The trial court adopted Henry's suggestion of valuing the right to use the land by unraveling the transaction that produced the right, thus using the cost of the trailer that was traded for the right to use the Chignik Lagoon land to determine the value of that right. Lorraine does not cross-appeal the use of this valuation method.

■ The trial court correctly observed that the parties had offered no additional evidence on the value of the right. "It is the duty of the parties, not the court, to ensure that all necessary evidence is presented at trial." [10] On this record it was not clear error to value the right by unraveling the original transaction.[11]

Henry also argues that the total with interest is "wrong." He asserts that the correct total of the trailer cost plus interest should be $18,364.87, not $46,497.39 as found by the trial court in the findings of fact prepared by Lorraine's counsel. Henry did not raise this objection in his motion to reconsider. He contends that the miscalculation is plain error, requiring reversal even though he did not raise the issue below.

Lorraine argues that Henry's figures use simple interest, while hers rely on compound interest, and that compound interest measures the "opportunity cost of using the money to purchase the right."

The trial court's findings and conclusions do not discuss any circumstances or reasons justifying use of compound interest. The findings of fact and conclusions of law submitted by Lorraine do not set out the formula used to calculate the $46,497.39 figure, but it does appear that the interest rate was compounded.

Absent specific factual findings that compound interest is appropriate, simple interest is used in this type of calculation.[12] Plain

**10.** *Zimin v. Zimin,* 837 P.2d 118, 122 (Alaska 1992) (citing *Hartland v. Hartland,* 777 P.2d 636, 640 (Alaska 1989)).

**11.** *Id.* at 122 (holding that absent evidence of present value of disputed property, it was not error to value property based on debt payments made during marriage) (citing *Hartland,* 777 P.2d at 640 (holding that reviewing courts cannot reverse and remand cases for new findings where parties had adequate opportunity to introduce evidence but failed to do so)).

**12.** *Alyeska Pipeline Serv. Co. v. Anderson,* 669 P.2d 956, 956–57 (Alaska 1983) ("AS 09.30.070 does not provide for compound interest on judgments."); *Estate of Gregory,* 487 P.2d 59, 64 (Alaska 1971) (holding that compound interest was not necessary to put estate in position it would have been in had administratrix not diverted assets for personal use, because doubt existed as to whether money would have been invested absent her diversion).

error is present " 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[13] We hold that it was plain error to use compound interest here, absent a finding that compound interest was necessary to measure the asset's value accurately. We remand for recalculation of the interest component of this asset.

### D. The Trial Court Did Not Err in Dividing the Marital Portion of the EXXON VALDEZ Settlement Equally.

■ Henry argues that the court erred in dividing the marital portion of the EXXON VALDEZ settlement equally. Henry argues that he is the custodial parent of the couple's four children, that he is going to remain in Chignik Lagoon while Lorraine lives and works in Anchorage, and that he wants to give some of the settlement to his sons as crew share. Henry concludes that these concerns warrant a departure from an equal division. We are not convinced.

■ We have "repeatedly held that an equal division of property is presumptively valid."[14] Henry, as the party seeking deviation from the norm, bears the burden of showing that the property division is clearly unjust.[15] Henry has not met this burden. As Lorraine points out, any crew shares based on debts acquired during the marriage would be subtracted from the settlement as marital debts. The trial court considered this argument in its oral findings, holding that it was addressing Henry's monetary needs as the custodial parent with the award of child support arrearages rather than a greater share of the marital estate. For a trial court to award "one spouse a greater share of the marital property simply to ease

his or her burden of child support constitutes reversible error."[16]

We therefore affirm the trial court's equal division of the marital portion of the EXXON VALDEZ settlement because Henry has failed to overcome the presumption of validity.

### E. It Was Error to Charge the $6,800 Alyeska Permit Payout to Henry Without Benefit of a Recapture Analysis.

■ The trial court treated the $6,800 Alyeska permit payout as marital property and charged that amount to Henry. Henry first argues that the $6,800 was compensation for the devaluation of his limited entry permit, which the trial court had held to be his separate property. Lorraine argues that Henry waived this argument by not raising it below.

Henry's closing argument at trial did not discuss the characterization of the $6,800 payout. Henry did not raise the issue in his motion for reconsideration. He therefore waived any argument that the Alyeska payout should not be classified as a marital asset.[17]

■ Henry next argues that it was error to charge the payout against him because he spent the $6,800 before trial, and it was therefore unavailable for division. Lorraine argues that Henry did not carry his burden of proving that he used the $6,800 for normal living expenses.

■ Normally, an asset that no longer exists at the time of trial is not available for distribution.[18] The asset may be recaptured where there is evidence of dissipation, waste, or conversion with the intent to deprive the marital estate.[19] If the Alyeska settlement

**13.** *Compton v. Chatanika Gold Camp Properties,* 988 P.2d 598, 601 (Alaska 1999) (quoting *Murray v. Feight,* 741 P.2d 1148, 1156–57 (Alaska 1987)).

**14.** *Julsen,* 741 P.2d at 645 (citations omitted).

**15.** *Id.* (citing *Hurn v. Hurn,* 541 P.2d 360, 360 (Alaska 1975)).

**16.** *Arndt v. Arndt,* 777 P.2d 668, 670 (Alaska 1989) (citing *Houger v. Houger,* 449 P.2d 766, 771 (Alaska 1969)).

**17.** *Reid v. Williams,* 964 P.2d 453, 456 (Alaska 1998) (citing *Brooks v. Brooks,* 733 P.2d 1044, 1053 (Alaska 1987)).

**18.** *Cox,* 882 P.2d at 918 n. 5 (citing *Gallant v. Gallant,* 882 P.2d 1252, 1255 n. 5 (Alaska 1994)).

**19.** *Jones v. Jones,* 942 P.2d 1133, 1139 (Alaska 1997) (citing *Foster v. Foster,* 883 P.2d 397, 400 (Alaska 1994)).

was used for marital purposes or normal living expenses, recapture is inappropriate.[20] It was error to charge the settlement amount to Henry without first conducting a recapture analysis. We vacate the assessment of this amount to Henry and remand for further proceedings consistent with this opinion.

### F. The Trial Court on Remand Should Decide Whether It Is in the Children's Best Interests to Allow Lorraine to Delay Payment of Her Child Support Arrearages.

■ Henry argues that it was error to allow Lorraine to delay payment of her past due child support until she received her share of the EXXON VALDEZ claim money. Henry contends that because child support is a special debt on behalf of children that is separate from property division, the trial court had no authority to allow Lorraine to delay payment.

■ A trial court has discretion to approve an offset against marital property for child support when it is in the child's best interests.[21] In this case the offset applies only to child support arrearages, and does not affect the amount of Lorraine's ongoing child support obligation. The trial court found that until the EXXON VALDEZ settlement is paid, neither party has the resources to pay the other party.

When the trial court entered its order, Henry owed Lorraine $27,648.69 to equalize the property division. This amount was likely to exceed Lorraine's child support arrearages. Our holding today may result in substantial changes in the value of the assets charged to Henry. In light of probable changes in the totals each party is to receive, we need not decide whether it was an abuse of discretion to delay the settlement of the accounts between the parties until the EXXON VALDEZ settlement is received. The

trial court did not make best interests findings on this issue. We therefore remand. If on remand the trial court finds that it is in the children's best interests to do so, it may then offset child support arrearages against the marital property distribution.[22]

### G. The Trial Court Did Not Err in Ordering Henry to Use Proceeds from Any Sale of His Fishing Permit to Satisfy His Property Division Debts to Lorraine.

[18] Henry argues that the trial court erred by granting Lorraine a lien against Henry's interim limited entry permit. Lorraine argues that Henry has not adequately analyzed this issue, and that AS 09.38.015 does not prevent a creditor from having a lien against the permit that simply guarantees her a right to the proceeds should the debtor sell the permit.

The trial court's post-trial oral remarks contain this order:

> In the event Ms. Shangin is owed money by Mr. Brandal, she may also have a lien against his interim use permit, or if that ripens into an actual permit, to the extent that's allowed by law, although I suspect— I question whether that's allowed. But she can't enforce it and require sale of the permit.

The written order later entered states that "[i]f it is determined that the claim will never be paid, Lorraine will be deemed to have a lien against Henry's limited entry permit, and may collect any award owed to her out of any sale proceeds of the permit."

[19] Read in isolation, the written order appears to encumber Henry's limited entry permit. Such an order would be contrary to statute.[23] But we look to both the oral comments and the written findings of fact and conclusions of law to clarify the scope of the

---

**20.** *Id.*

**21.** *State, Dep't of Revenue, Child Support Enforcement Div. v. Pealatere,* 996 P.2d 84, 87 (Alaska 2000).

**22.** *Id.* (upholding trial court's determination that it was not in best interest of children to force father to sell his tools to pay mother, and that it

would be preferable to allow mother to use her share of the tools to offset her child support obligation in light of explicit factual findings supporting trial court's decision).

**23.** AS 16.43.150(g) provides that "an entry permit may not be (1) pledged, mortgaged, leased, or encumbered in any way...."

order.[24] The trial court orally specified that it deemed Lorraine to have a lien against Henry's permit "to the extent that's allowed by law." The limitations the trial court placed on the "lien" demonstrate that the court was effectively entering an order against Henry's person requiring him to turn over sale proceeds under pain of contempt, rather than creating some sort of a security interest in the permit itself.

We hold that the trial court did not abuse its discretion in requiring Henry, in the event he sells the permit, to use the money to satisfy his property division debts to Lorraine.

### H. The Trial Court Did Not Fail to Apply the *Merrill* Factors.

█ Henry argues in his conclusion that the trial court erred by making only cursory reference to the *Merrill* factors and in dividing the marital estate equally.[25] Our reading of the record shows that the trial court did meaningfully refer to the *Merrill* factors, and did not clearly err in finding that Henry and Lorraine are similarly situated. Henry does not cite any evidence that would call these findings into question.

Additionally, Henry did not raise this issue below or in his points on appeal. Issues not presented to the trial court or included in the points on appeal are waived.[26] We therefore decline to review the trial court's application of the *Merrill* factors.

## IV.  CONCLUSION

We AFFIRM the classification of Henry's right to use the Chignik Lagoon land as a marital asset, and the use of an unusual method to value the asset. We hold that it was error to use compound interest to value the asset, and REMAND for further calculations. We AFFIRM the equal distribution of the marital portion of the EXXON VALDEZ settlement proceeds. We REMAND for application of a recapture analysis of the $6,800 Alyeska permit payout Henry allegedly used for normal living expenses. We REMAND for determination whether it is in the children's best interests to delay payment of Lorraine's past-due child support, and AFFIRM the trial court's order requiring Henry to use sale proceeds from his limited entry permit to satisfy his marital property division debts to Lorraine.

CARPENETI, Justice, not participating.

---

24.  *Park v. Park*, 986 P.2d 205, 207–08 (Alaska 1999) (reviewing both written findings and post-trial oral remarks for consideration of statutory factors).

25.  *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962).

26.  *Gunderson v. University of Alaska*, 902 P.2d 323, 327 n. 5 (Alaska 1995) (citing *Moran v. Holman*, 501 P.2d 769, 769–70 (Alaska 1972)).