*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARY LICHT as personal representative of the Estate of Gordon Haber, FRIENDS OF ANIMALS, INC., and BARBARA BREASE, | ) ) ) ) ) | Supreme Court No. S-14318 Superior Court No. 3AN-09-06759 CI |
| | ) | O P I N I O N |
| Appellants, | ) ) | No. 6744 - January 18, 2013 |
| v. | ) ) | |
| THOMAS E. IRWIN, Commissioner of the Department of Natural Resources, State of Alaska, | ) ) ) ) | |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Philip R. Volland, Judge.

Appearances: Tanya R. Schultz, Holmes Weddle & Barcott, P.C., Anchorage, for Appellants. Colleen J. Moore, Senior Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

CARPENETI, Chief Justice.

## I.    INTRODUCTION

In 2009 the Department of Natural Resources issued two decisions, one removing the classification of certain lands as wildlife habitat and the other allowing for the conveyance of these lands to the Denali Borough for further development. A wildlife biologist and others submitted comments challenging the Department's actions; the biologist's comments and requests for reconsideration were denied and he filed an appeal in the superior court. While the appeal was pending, the wildlife biologist died in a plane crash and his sister, the personal representative of his estate, filed a motion to substitute an individual and an organization as appellants in this case. The court allowed for substitution of the personal representative, but prohibited the substitution of third parties; after the personal representative declined to personally continue the appeal, the superior court dismissed the case. The personal representative now appeals.

We conclude that the superior court correctly articulated the proper test for substitution on appeal, but because it did not acknowledge the comments that the proposed appellant submitted during agency proceedings, we remand for the court to consider whether these comments indicate the proposed appellant was entitled to prosecute in the review proceeding below, thereby making her a proper party for substitution. We affirm the superior court's conclusion that the personal representative could not transfer or assign her right to appeal.

## II.    FACTS AND PROCEEDINGS

On January 20, 2009, the Commissioner of the Department of Natural Resources, Thomas E. Irwin , issued a decision adopting an Amendment to the Tanana Basin Area Plan (Tanana Amendment), which reclassified approximately 26,765 acres of land within the Denali Borough. The commissioner simultaneously issued a separate final finding and decision approving the conveyance of approximately 21,412 acres of state land to the Denali Borough under the Municipal Entitlement Act. These two

decisions effectively reclassified certain lands to make them conveyable to the Denali Borough by removing their previous wildlife habitat designation and accompanying restrictions on development, thereby making it possible to transfer them out of state ownership.

During the process leading up to these decisions, the Department of Natural Resources (DNR or the Department) gave the public approximately 60 days to submit comments on proposed Tanana Amendment and preliminary decision. Comments were due on July 31, 2008, by 5:00 p.m. Wildlife biologist Dr. Gordon Haber and almost 50 other people submitted written comments during this period. Barbara Brease, a resident of Healy, attended a public meeting on the Tanana Amendment and attempted to submit written comments during this period. Her email arrived on time, but an attachment containing her substantive comments was not received. After being notified that the attachment was not received, Brease resent it at 5:38 p.m. on July 31. Because her comments were not received before the 5:00 p.m. deadline, they were not considered by DNR. Brease did not make further attempts to participate in this decision-making process after being informed that her email would not be considered. Dr. Haber's comments were timely received by DNR and he later submitted additional comments in December 2008.

After the commissioner's final decision was issued on January 20, 2009, Dr. Haber timely filed a request for reconsideration arguing that it was in the State's best interest to preserve the areas as wildlife habitat due to the areas' importance to the native wildlife populations, the economic return to Alaska from tourism and other activities, and the ecological implications of development. The commissioner denied this request on March 24, 2009. Dr. Haber appealed this denial to the superior court on April 22, 2009. He argued that the agency's decisions were "arbitrary, capricious and without substantial support in the record" and asserted that the lands should be retained in public ownership

because DNR may not abdicate its "primary responsibility and legal obligation to manage, protect and preserve wildlife habitat lands in the highest and best public interest of all Alaskans." Dr. Haber filed his opening brief in that case on September 17, 2009, noting that it was his intent "to ensure that DNR provides the borough's entitlement [under the Municipal Entitlement Act] in a way . . . that does not hurt broader interests of the state and ultimately the borough itself." Specifically, he argued that DNR and the commissioner "violated AS 38.05.035(e)(2)[1] and AS 38.04.065(b)(4-6),[2] the statutory provisions that contain requirements for the reclassification and conveyance of state lands as well as various duties of the DNR Commissioner when issuing decisions." Dr. Haber died in a plane crash in Denali National Park on October 14, 2009.

---

[1] AS 38.05.035(e)(2) states:

[T]he director shall discuss in the written finding prepared and issued under this subsection the reasons that each of the following was not material to the director's determination that the interests of the state will be best served:

(A) facts pertaining to the land, resources, or property, or an interest in them other than those that the director finds material under (1)(B)(ii) of this subsection . . . .

[2] AS 38.04.065(b) provides:

In the adoption and revision of regional and site-specific land use plans, the commissioner shall . . .

. . . .

(4) rely, to the extent that it is available, on the inventory of the state land, its resources, and other values;

(5) consider present and potential uses of state land;

(6) consider the supply, resources, and present and potential use of land under other ownership within the area of concern . . . .

On October 29, 2009, DNR filed a notice of death of appellant and motion to dismiss appeal. On January 28, 2010, Dr. Haber's sister, Mary Licht, appeared as the personal representative of Dr. Haber's estate and moved, under Alaska Appellate Rule 516(a) and Alaska Civil Rule 25(a), to substitute Barbara Brease and Friends of Animals, Inc. as appellants in the case. DNR opposed the motion to substitute, Licht replied, and DNR responded. Both parties agreed that the motion raised two legal questions of first impression in Alaska: (1) When a public interest litigant files a timely appeal of a governmental policy decision, does the appeal survive the death of the appellant or is it abated?, and (2) Assuming the appeal can continue after the death of the original appellant, who may be a proper party to continue the appeal? Licht did not argue that she should be substituted to continue Dr. Haber's appeal, but rather asked for Brease and Friends of Animals to be substituted directly, or indirectly through a two-step process where she would be substituted as personal representative and then transfer her right to continue the appeal to Brease and Friends of Animals.

In January 2011, the superior court ruled that the appeal survived the death of the appellant, and granted appellants' request that Licht replace Dr. Haber. But the court denied the request for substitution by Brease and Friends of Animals. Because Licht never asked to be substituted herself, DNR moved for reconsideration and requested dismissal of the appeal. In April the superior court granted the Department's request for reconsideration and denied the motion to substitute in full. Licht appeals.

## III. STANDARD OF REVIEW

We interpret "our civil [and appellate] rules de novo, adopting the rule of law which is most persuasive in light of precedent, policy, and reason."[3] The matters of

---

   [3]    *Kellis v. Crites*, 20 P.3d 1112, 1113-14 (Alaska 2001) (internal quotation marks omitted).

first impression presented in this appeal — whether a timely appeal survives the death of the appellant and, if it does, who is a proper party to continue the appeal — are questions of law to which we apply our independent judgment.[4]

## IV. DISCUSSION

### A. It Was Error To Deny The Motion To Substitute.

Alaska Appellate Rule 516(a) dictates the procedure for substitution in case of the death of a party during an appeal. This rule provides:

> The death of a party in a civil action or proceeding shall not affect any appeal taken or petition for review made, or the right to take an appeal or to seek review, except as limited by [time]. The proper representatives of the estate, or in the personalty or realty, of the deceased party, according to the nature of the case, may voluntarily appear and be substituted as parties for the decedent, or substitution may be effected as in the case of death of a party pending an action in the superior court.[5]

Substitution in the "case of death of a party pending an action in the superior court" is governed by Alaska Civil Rule 25(a), which provides: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party."

---

[4]     *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 459 (Alaska 2010) (internal citations omitted); *see also Stevens v. State, Alcoholic Beverage Control Bd.*, 257 P.3d 1154, 1156 (Alaska 2011) (quoting *Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors*, 205 P.3d 326, 332 (Alaska 2009)) ("We apply our independent judgment to questions of law that do not involve agency expertise, including constitutional questions.").

[5]     Alaska R. App. P. 516(a).

The superior court determined that substitution of parties in this case would necessarily depend on an interpretation of both Appellate Rule 516 and Civil Rule 25. DNR argued that Appellate Rule 516 did not apply because Dr. Haber was defending "intangible" interests that were unique to him and that the appeal should therefore be treated as a civil claim or action originating in the trial court. The superior court rejected this argument, concluding that the case must be analyzed under the Appellate Rules as well as Alaska Civil Rule 25, because it was not an original claim or action in the trial court, but rather an administrative appeal properly governed by the Appellate Rules. However, Appellate Rule 516(a) states that "substitution may be effected as in the case of death of a party pending an action in the superior court," so Alaska Civil Rule 25 still affects the outcome of this dispute. The superior court ultimately concluded, under relevant case law, that it was authorized to allow substitution according to its "sound discretion."[6] We agree with the superior court.

### 1. The personal representative of a deceased appellant is not the only proper party for substitution on appeal.

The principal question raised by this appeal regards *who* may be a proper party for substitution in this appeal. Both sides acknowledge that Appellate Rule 516(a) would allow the personal representative to voluntarily appear and be substituted for the appellant. The question is whether the language of Appellate Rule 516(a), allowing for substitution by "[t]he proper representatives of the estate . . . according to the nature of the case" or as it "may be effected as in the case of death of a party pending an action in the superior court," permits the substitution of anyone other than the legal representative

---

[6] *See Compton v. Chatanika Gold Camp Props.*, 988 P.2d 598, 601 (Alaska 1999) (quoting *State v. 18,018 Square Feet, More or Less*, 621 P.2d 887, 889 (Alaska 1980) ("Whether or not a party should be substituted for another rests in the sound discretion of the trial court.")).

of the deceased appellant.  As noted above, Alaska Civil Rule 25 gives the court discretion to order substitution of "the proper parties," and states the motion for substitution may be made by the "successors or representatives of the deceased party or by any party."

The superior court determined the correct rule to apply in this case is "the general rule that the proper party to maintain appellate review after the death of an appellant is the individual who would be entitled to prosecute or defend in the review proceeding." Licht disagrees, arguing that "[w]hile the civil rules provide the procedural guidelines for substitution on appeal, they do not control or limit who may be substituted for a decedent/appellant in a given case." Licht emphasizes the public interest nature of this appeal, which she claims does not justify expenditure of estate resources to continue the suit, but does provide a basis for other concerned citizens to continue the litigation. Licht argues that only a broad approach to substitution could prevent the unjust result where "appeals of DNR decisions affecting state lands and resources . . . die with the appellant seeking to vindicate the public interest in the proper development and disposal of state lands." Licht asserts that this injustice would be especially harsh in cases like this one where willing members of the public are volunteering to substitute for the decedent, the personal representative of the estate wishes the appeal to continue, and the State would not be prejudiced from allowing the substitution.

Licht argues that the rule adopted by the superior court improperly limits "the class of those who could substitute for Dr. Haber on appeal to those with independent standing to appeal or request reconsideration of DNR's decision within the agency; that is, those who submitted timely written comment during the agency process

and were affected by the final decision."[7]  She argues that a person seeking to substitute for a deceased appellant should not need to establish independent standing because: (1) the new appellant would have to carry forward the arguments of the original appellant; (2) requiring a substitute to show independent standing would undermine the right to appeal, because standing aims to ensure adversity and the original appellant already fulfilled that requirement; and (3) the requirement that an appellant have participated at the agency level only ensures no new issues are brought on appeal, but there is no danger of that upon substitution because the substitute must adhere to the appellant's original arguments.  Licht maintains that the superior court's independent standing requirement "so limits the potential pool of those who can be substituted as to make substitution nearly impossible when the personal representative is unwilling or unable to carry on an appeal" and forecloses "vindication of the public interest through judicial review in contravention of policy."  Licht argues that this result is so perverse and incongruous with the need to ensure that state lands and resources are disposed of in the best interests of the public that the superior court's decision must be overturned.

---

[7]  Licht is referring to the eligibility requirements found in AS 38.05.035(I), the provision of the Alaska Land Act delineating who may appeal a final written finding of the Department of Natural Resources.  This statute provides:

> A person is eligible to file an administrative appeal or a request for reconsideration if the person
>
> (1) meaningfully participated in the process set out in this chapter for receipt of public comment by
>
> (A) submitting written comment during the period for receipt of public comment; or
>
> (B) presenting oral testimony at a public hearing, if a public hearing was held; and
>
> (2) is affected by the final written finding.

Licht cites *Mallick v. International Brotherhood of Electrical Workers*[8] as instructive on the appropriate rule of law to adopt in order to determine appropriate parties. Mallick was a union member who succeeded on his labor claim against the union, but died ten days after judgment was entered.[9] The union appealed and, after filing notice of his death, asked that the judgment be vacated.[10] Three other union members moved to be substituted for Mallick and the court granted the motion to substitute in order to "prevent frustration of the deterrence goals" of the statute under which he brought his claim.[11] The court held that the right to disclosure, which Mallick sought to vindicate with his suit, was shared by all union members, that no law explicitly barred substitution, and that it would rely on the flexibility and discretion inherent in the Rules of Appellate Procedure to ensure the fair and efficient administration of justice.[12] Licht urges the court to apply the same flexibility and discretion here because the right to proper disposal of lands, which Dr. Haber sought to vindicate, is shared by all members of the public.

DNR responds that the superior court's enumerated rule is too broad because "there is no indication in [Civil Rule 25], federal law, or the law of other states that anyone other than a legal representative is a 'proper party' to substitute for a deceased party." DNR acknowledges that Appellate Rule 516 provides a means for another party to involuntarily substitute a personal representative, but contends that "it

---

[8] 814 F.2d 674 (D.C. Cir. 1987).

[9] *Id*. at 675.

[10] *Id*.

[11] *Id*. at 675-78.

[12] *Id* at 678-79.

does not provide for the substitution of unrelated third parties." DNR explains that Dr. Haber was eligible to appeal its decision only because he was "personally affected by the . . . decision" so his interests in that decision were "personal, intangible interests that, like a defamation claim, should not survive the appellant's death." Even if the claim survives, DNR maintains that "[w]here there are no personalty or realty rights involved," the only parties that can be substituted into the appeal are the proper representatives of the estate. DNR relies on the Code of Civil Procedure, which provides that "[i]n the case of the death or disability of a party to an action, the court may . . . allow the action to be continued by or against that party's personal representatives or successor in interest,"[13] and cases from other jurisdictions to support its proposition that only the personal representative may be substituted.

DNR attempts to distinguish *Mallick*,[14] the "one case where an unrelated third party was allowed to substitute for a deceased appellant," by arguing that the union members in *Mallick* could have joined or intervened in the action before Mallick's death and even if the case were dismissed, those third parties could subsequently have filed an identical claim against the union.[15] Conversely, DNR asserts that because neither Brease nor Friends of Animals was eligible to appeal the Department's decision when it was issued, they cannot intervene in Dr. Haber's action, they could not file their own claim if this appeal were dismissed, and they cannot substitute as parties now.

We believe the superior court applied the correct test: The proper party to maintain appellate review after the death of an appellant is an individual who would be

---

[13]    AS 09.15.040.

[14]    814 F.2d 674 (D.C. Cir. 1987).

[15]    *Id*. at 676-79.

entitled to prosecute or defend in the review proceeding below. This rule strikes the appropriate balance between the competing interests inherent in allowing the appeal to survive the death of the appellant and ensuring that any substitute into the action is a proper party that is similarly affected by the decision.

### 2. Brease may be a proper party for substitution.

The superior court explained that Dr. Haber's appeal was "governed by 11 AAC 02.010(a), which articulates the review procedures available to 'a person affected by a decision,' promulgated by the DNR. This provision necessarily limits the definition of a 'proper party' to an individual who, similar to Dr. Haber, has been affected by the reclassification of land for which he sought review." The superior court concluded that Licht "failed to provide . . . sufficient evidence to indicate that Brease or Friends of Animals, Inc. were affected by the DNR's decision." The court noted that Dr. Haber had "commented extensively" throughout the DNR review process, relying on his own work as a wildlife biologist, and "[t]hus, when [he] appealed the DNR's decision, he argued that his own participation in the DNR's administrative process had been arbitrarily overlooked in violation of AS 38.05.035(e)(2) and AS 38.04.065(b)(4-6)." The superior court acknowledged that Licht's counsel indicated that "Brease may have commented on the amendment proposal, but did so late." It added that "[n]o information about the basis or substance of Brease's comments was submitted to this court." Given the lack of evidence that Brease and Friends of Animals were "similarly affected by DNR's decision," the court concluded "they cannot be considered 'proper parties' for substitution."

We disagree with the superior court's conclusion, however, because the court in fact was presented with information regarding the substance of Brease's comments. The comments themselves were part of the record. For reasons unclear to us, the superior court failed to notice or consider these comments. Indeed, at oral

argument, DNR conceded that the documents containing the substance of Brease's comments were in the record.  Moreover, DNR conceded at oral argument that if the legal test adopted by the superior court were correct — which we have concluded is the case — the documents would have to be reviewed to see if the parties are similarly situated.  Thus, we remand for the superior court to apply the test after considering all the evidence presented.

> **B.    A Personal Representative May Not Transfer Or Assign Her Interest In An Appeal.**

In the superior court proceedings, Licht requested either direct substitution by Brease and Friends of Animals, or for the court to employ a "two-step process whereby Licht is substituted as personal representative and her right to continue the appeal is then transferred or assigned to Barbara Brease and Friends of Animals." Although there is no case law directly addressing this alleged right to transfer an appeal, Licht bases her argument on Alaska Civil Rule 25(c),[16] Alaska Appellate Rules 516[17] and 521,[18] and general policy arguments.

The superior court noted that "[t]here is not a clear procedural avenue for transferring an appellant's interest in an appeal.  Civil Rule of Procedure 25(c) addresses

---

[16]    Alaska Civil Rule 25(c) provides for transfer in civil cases originated in the superior court:  "[I]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

[17]    Alaska Appellate Rule 516 states:  "The death of a party in a civil action or proceeding shall not affect any appeal taken or petition for review made, or the right to take an appeal or to seek review, except as limited by [time]."

[18]    Alaska Appellate Rule 521 provides:  "These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the appellate courts where a strict adherence to them will work surprise or injustice."

transfers of interest at trial, but is of little help in addressing Licht's motion." The superior court made no other mention of Licht's asserted right to transfer her interest in this appeal, implicitly concluding that it could not be done under the procedural rules.

Licht argues that the court abused its discretion in determining that because no procedure for transfer or assignment existed in the Alaska Appellate Rules, "it could not be done." She contends that there is "no reason *not* to apply the transfer of interest procedure found in Civil Rule 25(c) to Dr. Haber's appeal and movants' request for substitution" and contrasts this public interest appeal to other cases, like tort claims, where it is appropriate to prohibit the transfer of an interest in order to "prevent unscrupulous people from purchasing causes of action and trafficking in lawsuits for pain and suffering." Licht argues that policy clearly favors allowing transfer or assignment of the interest in this suit because it would sustain "(1) the right to appeal, (2) the preference in Appellate Rule 516 for the death of a party not to affect an appeal, (3) the instruction in Appellate Rule 521 to construe all appellate rules so as to advance justice, (4) the policy supporting judicial review of agency decisions and, especially those that implicate Article VIII, Section 10, of the Alaska Constitution, and (5) the public interest sought to be vindicated in Haber's appeal." Therefore, Licht claims the court should relax its procedural rules to allow this two-step substitution and transfer to occur.

DNR attacks Licht's policy arguments and maintains that " 'indirect' substitution contravenes the rules for direct substitution" and "would be nothing more than an end-run around the rules and law governing direct substitution." The Department emphasizes that the law "specifically provides for limited standing in appeals from DNR decisions" and these policies ensure that only persons who are actually affected by an agency decision may challenge it and provide the agency an opportunity to correct any errors before judicial intervention occurs. DNR contends that because neither Brease nor Friends of Animals was eligible to appeal DNR's decision in this case,

they should not be able to assume Licht's interest in the appeal now because "there is a strong policy against allowing unqualified persons to participate in appeals of administrative decisions."  DNR also warns of opening the floodgates to new litigation by creating a right to transfer an interest in an appeal.  Even though Licht argues that the Department would not be prejudiced by this substitution because Brease and Friends of Animals would be limited to pursuing the points on appeal already raised and briefed by Dr. Haber, such a limitation would be impossible to enforce and would "eviscerate all rules of standing and eligibility, and would allow parties without a personal stake in the matter to litigate issues and perhaps pursue agendas."

DNR argues that Licht mistakes whose right to appeal would be furthered by permitting indirect substitution.  The Department contends that because only Dr. Haber's right to appeal is at issue here, Licht must decide whether his interest in the appeal is sufficient to justify having the estate continue the appeal.  Because the personal representative may continue the appeal, prohibiting transfer does not offend Appellate Rule 516, it simply bars "unrelated, ineligible third parties" from continuing the appeal.  Preventing transfer would not offend the policy in favor of judicial review of DNR decisions because Brease and many others had "a full and fair opportunity to participate in a public process leading to this decision and to appeal from the final decision.  Any one of the almost 50 people who submitted comments on the proposed amendment decision likely could have requested reconsideration and then appealed, but didn't . . . ."  Thus, DNR maintains that Licht's policy arguments are misplaced and do not further the public interest.

There is no explicit procedure for transferring one's interest in an appeal.  Although Civil Rule 25(c) permits transfer of an interest in civil proceedings, as previously mentioned, this case involves an appeal and is governed by the Appellate Rules of Procedure.  Even in claims originating in the trial court, the court has discretion

to allow transfer or order the parties to be joined instead.[19]  Licht requests something substantially different, however:  By allowing a personal representative to transfer or assign his or her right to appeal, *the party* would have discretion to choose who can continue the appeal, not the court.  Both sides largely rely on broad policy arguments to support their claims, but these policies can be satisfied by the procedures for direct substitution.  DNR rightly emphasizes that allowing transfer in this case would create an end-run around the normal rules affecting substitution.  Thus, the superior court did not err in concluding Licht could not transfer or assign her right to appeal.

## V.    CONCLUSION

Because the superior court enumerated the correct legal test but overlooked the evidence of Brease's substantive comments in the record, we REMAND for the court to reapply the law given all the evidence presented.  We AFFIRM the superior court's ruling that a party may not transfer or assign its right to appeal.

---

[19]    *See* Alaska Civil Rule 25(c).