NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MICHAEL THOMAS IOZZO JR., ) | |
| ) | Supreme Court No. S-18986 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-15-05747 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| KIMBERLY CHELSIE ) | AND JUDGMENT* |
| TARPENNING, ) | |
| f/k/a Kimberly Iozzo, ) | No. 2081 – March 19, 2025 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Michael Thomas Iozzo Jr., pro se, Round Rock, Texas, Appellant. Amanda M. Lancaster, Turnagain Law, LLC, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

The superior court entered a Qualified Domestic Relations Order (QDRO) in a divorce action awarding a portion of the ex-husband's "disposable military retired pay" to the ex-wife upon his retirement. Seven years later the ex-husband retired, and the ex-wife began receiving her portion of his retirement pay.

---

\* Entered under Alaska Appellate Rule 214.

The following year the ex-husband was approved for a form of military disability pay which by law replaced the retirement pay, and the payments to the ex-wife ceased. She filed a motion for an order to show cause and to enforce the QDRO. The ex-husband failed to respond and the court granted the ex-wife's motion, ordering him to reinstate the retirement pay, reimburse the ex-wife for all missed payments, and pay the ex-wife's attorney's fees and costs. The ex-husband moved for reconsideration, which the court denied.

The ex-husband appeals, arguing both that he was not given proper notice of the ex-wife's motion and that federal law forbids the marital division of his disability pay. We conclude that the failure to provide notice was harmless, but that the ex-husband's legal argument is correct: under federal law his disability benefits are not subject to division in a state divorce action. We therefore reverse the superior court's order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Michael Iozzo Jr. and Kimberly Tarpenning married in 2002 and divorced in 2015. As part of their property settlement, the court entered a QDRO which "entitled [Tarpenning] to a portion of [Iozzo's] United States military retired pay."

Iozzo retired from the military in July 2022 and received his first retirement payment in August. Payments to Tarpenning, governed by the Uniformed Services Former Spouses' Protection Act (USFSPA),[1] apparently commenced a few months later.

Iozzo asserts that in September 2022 he applied to the Department of Veterans Affairs (VA) for disability benefits and in March 2023 he was given a disability rating of 100%. He then applied for Combat-Related Special Compensation

---

[1]    10 U.S.C. § 1408 (2017).

(CRSC), a form of disability pay, which was approved in August 2023. Shortly thereafter Iozzo began receiving CRSC pay, which replaced his retirement pay entirely. Accordingly, by letter dated August 31, 2023, the Defense Finance and Accounting Service notified Tarpenning that her payments under the USFSPA were being terminated "since the member is in a non-pay status."

**B.    Proceedings**

**1.    Motion to show cause and enforce the QDRO**

Tarpenning filed a motion to show cause and to enforce the QDRO in October 2023. She asked "the Court to order [Iozzo] to show cause as to why he should not be found in contempt of court for violating the [QDRO]," for the court to "enforce the QDRO," and for associated attorney's fees and costs pursuant to Alaska Civil Rule 82(a). Tarpenning argued that because Iozzo "willfully elected to change his retirement benefit," his actions amounted to a "willful failure to comply with the standing QDRO" and he should be found in contempt of court.

Iozzo did not timely respond, and the superior court granted the motion to show cause. Iozzo was ordered to "reinstate the retirement pay" and was made "responsible for all back payments from the date of termination" and "attorney's fees and costs for having to litigate this issue."

**2.    Iozzo's motion for reconsideration**

Iozzo timely sought reconsideration on grounds that the court had overlooked relevant law and important facts.[2] First, he argued that Tarpenning's motion to show cause failed to comply with the notice requirements of Alaska Civil Rule 5(g)(2).[3] Second, he argued that his current form of military benefits was not subject

---

[2]    *See* Alaska R. Civ. P. 77(k)(1)(i)-(ii).

[3]    The rule provides: "[I]f a party appeared in his or her own behalf in the prior action or proceeding, the paper served shall include notice to the party of the

to division in divorce.  He explained that upon retirement he had received "Concurrent Retired and Disability Pay (CRDP)"[4] — a taxable reimbursement "classified as 'disposable military retired pay' " and "subject to division for a former spouse" in accordance with the USFSPA — but that the disability pay he later received in lieu of CRDP was not "categorized as retirement pay" and therefore not covered by the QDRO. He also asserted that the QDRO, which he noted was drafted by Tarpenning "with the aid of legal counsel," does not include any provision for indemnification "in the event that [he opted] to receive disability benefits instead of 'disposable military retired pay.' "

The superior court vacated its order granting the motion to show cause and invited Tarpenning to file an opposition to Iozzo's motion for reconsideration, which she did.  The court then denied Iozzo's motion for reconsideration, again ordering him to "reinstate the retirement pay, . . . [repay] all back payments from the date of termination," and pay Tarpenning's "attorney's fees and costs for having to litigate this issue."  Iozzo appeals.

## III.  STANDARD OF REVIEW

"We interpret 'our civil and appellate rules de novo, adopting the rule of law which is most persuasive in light of precedent, policy, and reason.' "[5]  "[W]e review a trial court's rulings on questions of law, and the application of law to fact, de novo

---

party's right to file written opposition or response, the time within which such opposition or response must be filed, and the place where it must be filed."

[4]    *See* 10 U.S.C. § 1414(a) ("Payment of both retired pay and compensation . . . (1) . . . Subject to subsection (b), a member or former member of the uniformed services who is entitled for any month to retired pay and who is also entitled for that month to veterans' disability compensation for a qualifying service-connected disability . . . is entitled to be paid both for that month without regard to sections 5304 and 5305 of title 38.").

[5]    *D&D Servs. v. Cavitt*, 444 P.3d 165, 168 (Alaska 2019) (alteration omitted) (quoting *Licht v. Irwin*, 292 P.3d 915, 918 (Alaska 2013)).

and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

Iozzo makes two arguments on appeal, one procedural and one substantive. First, he argues that the superior court erred by granting Tarpenning's motion for an order to show cause when the motion failed to comply with the notice requirements of Alaska Civil Rule 5(g)(2). Second, he argues that the court's order conflicts with controlling federal law, which provides that his CRSC benefits are not retirement pay that is subject to division in state divorce proceedings. Though Iozzo's procedural argument has merit, we conclude that it does not require reversal because the failure of notice was ultimately harmless. But Iozzo is correct that the court's order that he reinstate his retirement pay and repay Tarpenning for past amounts conflicts with controlling federal law and must be reversed.

### A. Tarpenning's Failure To Comply With Civil Rule 5(g)(2) Was Ultimately Harmless.

Iozzo contends that Tarpenning's motion to show cause did not comply with Civil Rule 5(g)(2), meaning that he lost the opportunity for input before the motion was granted. Rule 5(g)(2) governs service after a final judgment on a party who "appeared in his or her own behalf" in the prior proceeding.[7] It requires that if a paper is served on the party a year or more after the last time any paper was filed in the action, "the paper served *shall include notice* to the party of the party's right to file written

---

[6]       *Gross v. Wilson*, 424 P.3d 390, 395 (Alaska 2018) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[7]       Alaska R. Civ. P. 5(g)(2). The final judgment here was the parties' prior divorce decree.

opposition or response, the time within which such opposition or response must be filed, and the place where it must be filed."[8]

Tarpenning's motion did not comply with Rule 5(g)(2). The motion itself did not contain any of the required information, and the email from Tarpenning's lawyer transmitting the motion merely read "Good Morning, Please see attached."

But a failure to comply with service rules does not warrant reversal if it was harmless.[9] Here, after the motion to show cause was granted without proper notice, Iozzo moved for reconsideration. The court vacated the order granting the motion to show cause and invited Tarpenning to file an opposition, which she did. Although the court ultimately denied Iozzo's motion, it appears to have considered its substance and reached a decision on the merits. Because the remedy for a failure to provide Rule 5(g) notice would be to hear the arguments that would have been presented had proper notice been given — and because the court did that — the Rule 5(g) violation was harmless.[10]

---

[8] *Id.* (emphasis added).

[9] *Cf. Murat v. F/V Shelikof Strait*, 793 P.2d 69, 73 (Alaska 1990) (noting that "mere service on a party rather than on a party's attorney in violation of the civil rules [including Rule 5(e)] will not render a judgment void, but will instead subject it to possible reversal based on the particular circumstances of the individual case"); *Kenai Peninsula Borough v. Eng. Bay Vill. Corp.*, 781 P.2d 6, 10 (Alaska 1989) (explaining that issuing default judgment without adequate notice "should not ordinarily be regarded as rendering the underlying judgment void," but rather that error "should be considered in the light of the surrounding circumstances," potentially rendering it harmless (quoting 7 J. MOORE ET. AL., MOORE'S FEDERAL PRACTICE ¶ 60.25[2], at 60–237 to –238 (2d ed. 1985))), *overruled on other grounds by Hatten v. Hatten*, 917 P.2d 667, 671 (Alaska 1996).

[10] The obligation to comply with Rule 5(g)(2) falls on the party serving the paper, but courts should take reasonable steps to ensure compliance.

**B.** **State Courts Cannot Mandate Selection Of Military Retirement Pay Or Repayment Of Waived Retirement Pay.**

Iozzo's substantive argument on appeal is that it was contrary to controlling federal law for the superior court to mandate termination of the CRSC, reinstatement of divisible retirement pay, and repayment of past amounts to Tarpenning. He argues that the United States Constitution's Supremacy Clause, the USFSPA, and federal case law all make different aspects of the order improper. His claims have merit; not only federal statutes and case law but also our own case law require reversal of the superior court's order.

The USFSPA provides that "a court may treat disposable retired pay . . . as property of the [former service] member and his spouse" upon divorce.[11] But the statute expressly excludes amounts "deducted from the retired pay . . . [that were] waive[d]" to receive combat-related disability pay.[12] In *Howell v. Howell* the United States Supreme Court interpreted this language from the USFSPA to hold that any attempt to circumvent the statute and effectively divide property by nominally ordering "reimbursement [or] indemnification" would "displace the federal rule and stand as an obstacle to the accomplishment and execution" of federal objectives.[13]

The facts of *Howell* are similar to those of Iozzo's case. In *Howell*, an ex-wife was awarded and received half of her ex-husband's military retirement pay.[14] The ex-husband later "elected to receive disability benefits and consequently had to waive about $250 per month of the roughly $1,500 of military retirement pay he shared."[15] Arizona courts held that the ex-wife was entitled to the waived portion because the

---

[11]    10 U.S.C. § 1408(c)(1).

[12]    10 U.S.C. § 1408(a)(4)(A)(ii); 38 U.S.C. §§ 1101–76.

[13]    581 U.S. 214, 222 (2017).

[14]    *Id.* at 218-19.

[15]    *Id.* at 219.

amount she was owed had "vested" at the time of divorce — prior to the ex-husband's election of disability pay.[16]  They further ordered the ex-husband "to indemnify [his ex-wife] for the reduction."[17]  But the Supreme Court disagreed, explaining that post-divorce waiver was irrelevant because the ex-wife's interest had not yet vested; the ex-husband's "military retirement pay at the time it came to [the ex-wife] was subject to later reduction (should [the ex-husband] exercise a waiver to receive disability benefits to which he [was] entitled)."[18]  The Supreme Court also expressly rejected any attempt to circumvent the law by relabeling the order "as [one] requiring [the ex-husband] to 'reimburse' or 'indemnify' [the ex-wife], rather than an order that divides property," noting that "[t]he difference is semantic and nothing more."[19]  It therefore reversed the Arizona decision, concluding that federal law preempted any state-imposed division of waived retirement pay.[20]

In short, it is settled law that military retirement pay waived to receive disability pay is not divisible marital property.  The order now under review — that Iozzo "reinstate the retirement pay and [reimburse Tarpenning] for all back payments from the date of termination" — is what *Howell* expressly prohibits:  requiring a disabled veteran who elected to take disability after the divorce to "reimburse" a former

---

[16]   *Id.*

[17]   *Id.*

[18]   *Id.* at 221-22 ("Accordingly, while the divorce decree might be said to 'vest' [the ex-wife] with an immediate right to half of [the ex-husband's] military retirement pay, that interest is, at most, contingent, depending for its amount on a subsequent condition:  [the ex-husband's] possible waiver of that pay.").

[19]   *Id.* at 222 ("Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress.  All such orders are thus pre-empted.").

[20]   *Id.* at 223.

spouse for the retirement pay given up in exchange.[21]  We have necessarily followed *Howell*.[22]  And as Iozzo points out, the QDRO — which was drafted by Tarpenning and her counsel — entitles Tarpenning only to "a portion of [Iozzo's] United States military retired pay."  While divorcing spouses may contract to receive reimbursement for waived retirement pay, the parties do not appear to have made such a contract here.[23]  The QDRO entitles Tarpenning only to a share of Iozzo's "military retirement pay" — an amount *Howell* makes clear is "subject to later reduction" and excludes any amount waived to receive disability pay instead.[24]

Tarpenning's arguments are not persuasive.  First, she asserts that "when the parties['] QDRO was drafted and signed [in 2015] CRDP and CRSC did not exist."  This is simply not true, as CRDP was created in 2001 and the CRSC in 2002.[25]

---

[21]    *Id.* at 222.

[22]    *Gross v. Wilson*, 424 P.3d 390, 400 (Alaska 2018) ("[*Howell*'s] holding abrogates our decisions to the extent they authorize indemnification for reductions in a former spouse's share of retirement payments caused by a veteran's post-divorce waiver.").

[23]    *Cf. Jones v. Jones*, 505 P.3d 224, 233 (Alaska 2022) (upholding divorce agreement that "expressly provide[d] for indemnification in the event that [the ex-wife's] retirement benefits [were] affected by [the ex-husband's] receipt of disability pay").

[24]    581 U.S. at 221.

[25]    10 U.S.C. § 1414 (2001); 10 U.S.C. § 1413a (2002); *see also Guerrero v. Guerrero*, 362 P.3d 432, 439 (Alaska 2015) ("[CRSC] allows veterans disabled in combat to receive compensation in lieu of retirement payments up to the amount waived to receive VA disability benefits.  [CRDP] is a phase-in program allowing qualifying disabled veterans to receive VA disability pay while waiving incrementally smaller amounts of retirement pay and providing for receipt of full retirement for all qualified disabled veterans pay by 2014." (footnote omitted)); and *see Jordan v. Jordan*, 480 P.3d 626, 635 (Alaska 2021) ("But in 2004 Congress modified the VA waiver requirements and its consequences by providing for concurrent receipt of retired pay and disability benefits for certain classes of eligible retirees." (quotation marks, alterations, and citation omitted)).

Tarpenning next argues that "[t]he crux of the issue . . . is whether [Iozzo] maliciously elected to change" his retirement pay to prevent her from "receiving the pay outlined in the QDRO" and whether doing so "violated the QDRO." But she does not identify any evidence that Iozzo was motivated by malice rather than financial considerations, nor does she point to any legal authority suggesting that a valid election of disability benefits may be invalidated by subjective intent. And Iozzo's election did not "violate[] the QDRO." The QDRO entitles Tarpenning only to Iozzo's "disposable military retirement pay"; it does not mandate that he elect such pay over other available options.

Next, Tarpenning argues that "[u]nder contract theory" and promissory estoppel we should enforce the parties' QDRO and divorce agreement. While Tarpenning likely waived this argument by not raising it below,[26] even if properly raised it is not persuasive. First, as just explained, the QDRO remains subject to enforcement — there is simply no retirement pay to distribute. And second, Tarpenning merely lists the elements of promissory estoppel and, without factual support, asserts that "all [the] elements . . . have been met." Even if there were a contract enforcement issue, this conclusory legal assertion does not resolve it.

Finally, Tarpenning attempts to mischaracterize Iozzo's arguments, claiming that he "cites *Howell v. Howell* but again he does not fully brief the issues in before [sic] the Court." But Iozzo sufficiently and persuasively briefs *Howell*, and Tarpenning makes no argument — nor does one seem to exist — that the case does not control. The order mandating the reinstatement of retirement pay and reimbursement of past amounts was therefore erroneous.

---

[26] *See Jones*, 505 P.3d at 233 ("A party may not raise an issue for the first time on appeal." (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001))).

# V. CONCLUSION

The superior court's order mandating reinstatement of retirement pay, reimbursement of back payments, and payment of attorney's fees is REVERSED.